UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Eta Compute, Inc.,<br><br>    Plaintiff,<br><br>    v.<br><br>Timothy D. Semones; Susan Desko; Inphi Partners, LLC; Susan Desko, P.C., and DOES 1 through 50,<br><br>    Defendant. | Case No. 1:18-cv-00552-BLW<br><br>MEMORANDUM DECISION AND ORDER |

# INTRODUCTION

Before the Court is Plaintiff Eta Computer, Inc.'s Ex Parte Application for Writ of Attachment (Dkt. 7). For the reasons explained below, the Court will issue an Order to Show Cause, requiring Defendants to appear before this Court on January 2, 2019, at 1:30 p.m. to show cause why a prejudgment writ of attachment should not issue. The Court will also grant plaintiff's request to issue a writ of attachment immediately, before the show-cause hearing.

# DISCUSSION

Plaintiff Eta Compute, Inc. alleges that its former Chief Financial Officer, Defendant Timothy D. Semones, in concert with his spouse, Defendant Susan Desko, stole $3 million from Eta to fund their lifestyle, including the ongoing construction of a multi-million home for themselves in Idaho. *Compl.*, Dkt. 1, ¶ 1.

Eta discovered the theft in late November 2018, when its CEO "noticed a discrepancy in Eta's Wells Fargo bank account reflecting a balance of approximately $1,800,000 less than he expected." *Id.* ¶ 27. When Mr. Semones was asked about the discrepancy, he initially attempted to cover up the theft by altering an Eta bank statement.

The CEO quickly ascertained that the bank statement was altered, and a few days later, on December 6, 2018, Mr. Semones admitted that during the past year or so, he had transferred a total of $3 million from Eta's account to defendants' bank accounts "without the knowledge or permission of anyone at Eta." *Id.* ¶ 22; *see also id.* ¶¶ 13-21 (detailing the separate transfers). Mr. Semones further explained that he had attempted to repay some of the stolen money in May 2018, by transferring $1.5 million from Defendant Inphi Partners, LLC's checking account to Eta's account. The net result, according to plaintiff, is that defendants continue to wrongly hold $1.5 million that rightfully belongs to Eta.

The parties initially attempted to resolve this matter privately. During the December 6, 2018 interview, Mr. Semones allegedly said he would gather all Defendants' bank statements and provide them to Eta's attorneys. The next day, Mr.

Semones reported he was "in the process of gathering up statements." *Magarian Aff.* ¶ 3, Ex. A. But those statements still have not been provided to Eta, and, further, Eta reports that when Mr. Semones listed assets he would have available to repay Eta, he mentioned $450,000 in a Wells Fargo brokerage account, but, at the same, time, said he intended to spend that money – including for his child to attend college overseas and to provide for "other needs." *See App.*, Dkt. 8, at 13-14.

Plaintiff alleges that, given Mr. Semones' past admitted theft, his current refusal to cooperate with plaintiff, and his stated intent to spend monies in the Well Faro brokerage account, plaintiffs have demonstrated that defendants' bank accounts "are subject to imminent transfer or concealment." *App.*, Dkt. 8, at 17. Additionally, plaintiff has identified seven vehicles owned by defendants and argues that these vehicles are likewise in danger of imminent transfer or concealment.

## THE GOVERNING LEGAL STANDARD

Plaintiffs request a writ of attachment, as authorized by the Idaho statutory law, pursuant to Federal Rule of Civil Procedure 64. Rule 64 which authorizes district courts to employ state law remedies for attachment. *See* Fed. R. Civ. P. 64(a), (b).

Under Idaho statutory law, before a writ of attachment may issue, plaintiffs must demonstrate: (1) that the defendant is indebted to the plaintiff; (2) that the debt is upon a contract, express or implied, for the direct payment of money; and (3) that the payment of the same has not been secured by any mortgage, deed of trust, security interest or lien upon real or personal property; and (4) the attachment is not sought and the action is not

prosecuted to hinder, delay, or defraud any creditor of the defendant. *See* Idaho Code 8-502(a).

After a plaintiff files an application of a writ of attachment, the court "shall, without delay, examine the complaint and affidavit, and if satisfied that they meet the requirements of subdivision (a), it shall issue an order directed to the defendant to show cause why a writ of attachment should not issue." Idaho Code § 8-502(b).

In addition, the Court may "prior to a hearing" issue a writ of attachment "if probable cause appears…[b]y reason of specific facts shown, the property specifically sought to be attached is a bank account subject to the threat of imminent withdrawal…or [the property] is in immediate danger of concealment[] or removal from this state, or of sale to an innocent purchaser, and the holder of such property threatens to destroy, harm, conceal, remove it from the state, or sell to an innocent purchaser." Idaho Code § 8-502(c)(3).

Finally, "[u]pon the hearing on the order to show cause, the court shall consider the showing made by the parties appearing, and shall make a preliminary determination of whether there is a reasonable probability that the plaintiff will prevail in its claim." Idaho Code § 8-502(e).

## DISCUSSION

1. **The Show-Cause Hearing**

Eta has met the standard set forth in Idaho Code section 8-502(b) for this Court to order a show-cause hearing. Based on the materials submitted with Eta's application, the

defendants are indebted to Eta through their knowing receipt and retention of $1.5 million in stolen funds; the debt is upon a contract, express or implied, for the direct payment of money;[1] and the debt is not secured by any mortgage, deed of trust, security interest, or lien. Further, there is no evidence that the attachment is sought, or that the action is prosecuted, to hinder, delay, or defraud any other of defendants' creditors. The Court will therefore schedule a for-cause hearing in compliance with the requirements of Idaho Code Section 8-502(b) (providing that the hearing "shall be no sooner than five (5) days from the issuance thereof, and shall direct the time within which service thereof shall be made upon the defendant[s].").

2. **The Writ of Attachment**

The next question is whether the Court should issue the writ of attachment before the show-cause hearing. The Court concludes that such an order is warranted. Based on the affidavits submitted to the Court, Mr. Semones has admitted to stealing from Eta; he has admitted to falsifying bank statements to cover up his theft; and now, although he initially appeared to be cooperating with plaintiff (by agreeing to provide bank statements to Eta), he has reversed course and is refusing to provide those statements. Plus, he has

---

[1] *Wallace v. Perry*, 257 P.2d 231, 233 (Idaho 1953); *see also, Smith v. Smith*, 511 P.2d 294 (Idaho 1973) ("The substance of an action for unjust enrichment lies in a promise, implied by law, that a party will render to the person entitled thereto that which in equity and good conscience belongs to the latter."); *Hixon v. Allphin*, 281 P.2d 1042, 1045 (Idaho 1955) ("The essence of a quasi contractual obligation lies in the fact that defendant has received a benefit which it would be inequitable for him to retain."); *Cont'l Forest Prods. v. Chandler Supply Co.*, 518 P.2d 1201, 1205-06 (Idaho 1974) (same).

indicated that he intends to spend monies. Given all these facts, the Court concludes that the bank accounts identified are "subject to the threat of imminent withdrawal." Idaho Code § 8-502(c)(3). The Court will therefore issue a writ of attachment immediately.

The Court cannot say the same about the vehicles. Other than a conclusory allegation that the "Semones' fleet of vehicles are in immediate danger of concealment by the Defendants," *Mem.*, Dkt. 8, at 17, there are no specific factual allegations supporting this assertion. Such affidavits are not sufficient to justify attachment. *See, e.g., Valley Bank v. Dalton*, 714 P.2d 56, 61 (Idaho 1986) (holding that conclusory affidavit failed to justify attachment of vehicles). The writ of attachment will not, therefore, include any vehicles.

3. **The Undertaking**

Before a writ of attachment may issue, an undertaking must be filed. *See* Idaho Code § 8-503; *Rougle v. Turk*, 283 P.2d 915, 917 (Idaho 1955) ("If such undertaking be not filed the writ of attachment is void."). The relevant statute is Idaho Code section 8-503, which provides:

> No writ of attachment shall issue except upon the filing with the court of a written undertaking on the part of the plaintiff in such amount as determined to be proper by the court pursuant to subsection (e) of section 8-502, Idaho Code, to the effect that, if the defendant recover judgment, or if the attachment be wrongfully issued, the plaintiff will pay all costs that may be awarded to the defendant, and all damages which he may sustain by reason of the attachment not exceeding the sum specified in the undertaking; and that if the attachment is discharged on the ground that the plaintiff was not entitled thereto under section 8-501, Idaho Code, the plaintiff will pay all damages which the defendant may have sustained by reason of the attachment, not exceeding the sum specified in the undertaking.

Defendants say that they should only be required to file a "nominal" undertaking. Based upon the record in this case, the Court will require defendants to immediately file an undertaking in the amount of $100,000, subject to increase up to a total of $1.5 million, as will be detailed in a concurrently filed, separate order.

## ORDER

**IT IS ORDERED that** Plaintiff's ex parte application for a prejudgment writ of attachment is GRANTED. The Court will enter a separate order consistent with this memorandum decision.

DATED: December 21, 2018

_____
B. Lynn Winmill
Chief Judge
United States District Court