UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Eta Compute, Inc.,<br><br>    Plaintiff,<br><br>    v.<br><br>Timothy D. Semones; Susan Desko; Inphi Partners, LLC; Susan Desko, P.C., and DOES 1 through 50,<br><br>    Defendant. | Case No. 1:18-cv-00552-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Plaintiff Eta Compute, Inc. has filed two ex parte applications: (1) an Ex Parte Application for Leave to File a Second Amended Complaint (Dkt. 35); and (2) an Ex Parte Application for a Writ of Attachment (Dkt. 36). The Court will refrain from ruling on the ex parte application to amend the complaint. Instead, it will expedite the briefing schedule and rule on that application when the briefing is complete. As for the ex parte application for a writ of attachment, the Court will grant the application to the extent the Court will order third parties Andrew Pitt and AAP Holdings, Ltd. to show cause why a writ of attachment of $270,000 in Pitt's Banner Bank account ending in 5038 should not issue. That hearing will be conducted on **January 30, 2019 at 2:00 p.m.** The Court will deny the motion to the extent plaintiff seeks a pre-OSC-hearing writ of attachment,

though it will order AAP and Pitt Holdings not to transfer or otherwise spend the $270,000 held in the Banner Bank account before the OSC hearing.

## BACKGROUND

1. **The Alleged Theft**

Plaintiff Eta Compute, Inc. alleges that its former Chief Financial Officer, Defendant Timothy D. Semones, in concert with his spouse, Defendant Susan Desko, stole $3 million from Eta to fund their lifestyle, including the ongoing construction of a multi-million home for themselves in Idaho. When Mr. Semones was asked about the discrepancy, he initially attempted to cover up the theft by altering an Eta bank statement.

Eta's CEO quickly ascertained that the bank statement was altered, and a few days later, on December 6, 2018, Mr. Semones admitted that during the past year or so, he had transferred a total of $3 million from Eta's account to defendants' bank accounts "without the knowledge or permission of anyone at Eta." *First Am. Comp.*, Dkt. 6, ¶ 22. *see also id.* ¶¶ 13-21 (detailing the transfers). Mr. Semones further explained that he had attempted to repay some of the stolen money in May 2018, by transferring $1.5 million from Defendant Inphi Partners, LLC's checking account to Eta's account. *See id.* ¶ 26. The net result, according to plaintiff, is that defendants continue to wrongly hold $1.5 million that rightfully belongs to Eta.

The parties initially attempted to resolve this matter privately. During a December 6, 2018 interview, Mr. Semones allegedly said he would gather all Defendants' bank statements and provide them to Eta's attorneys. Mr. Semones further indicated that he

had various bank accounts at Wells Fargo, including a brokerage account containing $450,000 in cash. *See Dudley Aff.*, Dkt. 7-4, ¶ 17(g). Also during the interview, however, Mr. Semones allegedly said he did not intend to use the $450,000 cash in the Wells Fargo brokerage account to repay the money he owed Eta because he "had a child in college and 'other needs.'" *Id.* ¶ 18.

Negotiations between the parties eventually broke down and on December 12, 2018, Eta sued and filed an ex part application seeking a prejudgment writ of attachment on the bank accounts as well as the Semones' vehicles. *See Dec. 12, 2018 Ex Parte App.*, Dkt. 8.

2.  **The Writ of Attachment**

On December 21, 2018, the Court issued a writ of attachment on defendants' bank accounts (the "Subject Accounts"), including the Wells Fargo brokerage account. The Court also scheduled a show-cause hearing for January 2, 2019. *See Order,* Dkt. 13; *Writ,* Dkt. 15.

At the conclusion of the January 2, 2019 show-cause hearing, the Court maintained the attachment of the Subject Accounts and also ordered the defendants to, among other things, provide a full accounting to plaintiff regarding any amounts that had been transferred into or out of the Subject Accounts from December 1, 2018 forward. *See Jan. 1, 2018 Order,* Dkt. 26. Also, to the extent defendants had, in fact, transferred money out of the Subject Accounts, they were ordered to identify the recipient account (the "Recipient Accounts"). Defendants were ordered not to make expenditures from the

Recipient Accounts outside of paying reasonable living expenses and current routine monthly obligations. *Id.* at 5.

3. **The Alleged Fraudulent Transfer to AAP Holdings, Ltd. and Andrew Pitt**

Upon receiving the Court-ordered accounting from defendants, Eta learned that on December 10, 2018 – just a few days after that December 6, 2018 meeting – Mr. Semones transferred $500,000 from the Wells Fargo brokerage account into his Wells Fargo checking account and then into a newly opened account at Bank of the West. *See Ex Parte App. Mem.*, Dkt. 36-1, at 2-3 (detailing the transfers). Then, on January 2, 2019 – after the Court had already attached the Subject Accounts and perhaps just hours before the scheduled OSC hearing[1] – Defendants wired $270,000 from a Bank of the West Account to a third party, AAP Holdings, Ltd. AAP Holdings then transferred the $270,000 to Andrew Pitt's account, where it presumably sits today. Andrew Pitt is the managing partner of AAP Holdings. He pleaded guilty to wire fraud in 1997 and was sentenced to 24 months' incarceration. *See Sept. 8, 1997 Judgment*, Dkt. 37-2.

This *ex parte* application is aimed at attaching the bank account containing the $270,000. Plaintiff says this money was fraudulently transferred to AAP and then to Mr. Pitt.

---

[1] Plaintiff reports that defense counsel has indicated that Mr. Semones authorized this wire transfer a few hours before the Court hearing.

**MEMORANDUM DECISION AND ORDER - 4**

# DISCUSSION

Procedurally, plaintiff seeks relief by way of two ex parte applications. First, plaintiff asks to amend its complaint to allege a fraudulent transfer claim and to name two new defendants: AAP Holdings, Ltd. and Andrew Pitt. Second, plaintiff has filed an ex parte application to attach Pitt's bank account. Before ruling on the motions, the Court will make a general observation regarding ex parte filings. These sorts of filings have their place in in our adversarial system. But they certainly should not be the norm. As one court has observed, "Lawyers must understand that filing an ex parte motion . . . is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire." *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

**1.      Plaintiff's *Ex Parte* Application to File a Second Amended Complaint**

Plaintiff has not justified seeking leave to amend its complaint on an *ex parte* basis. Granted, because plaintiff is seeking to obtain a writ of attachment against proposed new defendants (AAP and Pitt) on an expedited basis, plaintiff may have justifiably sought to expedite the briefing schedule, but the decision to file the motion on an *ex parte* basis has not been justified. This is particularly so here where apparently just hours before filing the application, plaintiff's counsel reached out to defense counsel and asked if defense counsel would stipulate to the filing of an amended complaint. Plaintiff's counsel also emailed a copy of the *ex parte* motion to defense counsel the day *after* filing it. Defense counsel then emailed Court staff (with a copy to plaintiff's counsel) asking for

an opportunity to oppose the motion.

Under these circumstances, even though the Court anticipates granting the motion because of the liberal standard for such an amendment at this early stage of the litigation, it will nevertheless refrain from ruling on the application to amend the complaint at this time. Instead, the Court will expedite the briefing schedule as follows:

(1) Defendant's response to the ex parte application to amend the complaint shall be filed by **Wednesday, January 23, 2019**.

(2) The optional reply shall be filed by 5:00 p.m. Mountain Standard Time on **January 25, 2019**.

## 2.     The *Ex Parte* Application for Writ of Attachment

Given that Pitt Holdings and Andrew Pitt are not yet defendants in this action,[2] a threshold question is whether the Court may issue a writ of attachment against a third party. Here, the answer is yes because plaintiff is arguing that defendants fraudulently transferred assets to a third party. Under Idaho's fraudulent transfer statutes, a creditor (here, the plaintiff) may obtain "[a]n attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law." Idaho Code § 55-916. Thus, as the Court interprets these Idaho statutes, Eta may seek to attach a third party's bank account containing fraudulently transferred assets. *See General*

---

[2] Given the liberal standards for amendment, the Court anticipates granting plaintiff leave to amend its complaint, meaning that AAP Holdings and Pitt should be named defendants by the time this Court conducts the show-cause hearing plaintiff is requesting.

*Electric Co. v. Chuly Int'l, LLC*, 118 So. 3d 325 (Ct. App. Fla. 2013) (interpreting a Florida statute substantially identical to Idaho's, observing that "[a] prejudgment attachment is available against assets fraudulently transferred from a debtor and held in the name of another").

Plaintiff requests a writ of attachment and a show-cause hearing, as authorized by the Idaho statutory law, pursuant to Federal Rule of Civil Procedure 64, which authorizes district courts to employ state law remedies for attachment. *See* Fed. R. Civ. P. 64(a), (b).

### A. Idaho statutes relating to prejudgment writs of attachment

Under Idaho statutory law, before a writ of attachment may issue, plaintiffs must demonstrate: (1) that the defendant is indebted to the plaintiff; (2) that the debt is upon a contract, express or implied, for the direct payment of money; and (3) that the payment of the same has not been secured by any mortgage, deed of trust, security interest or lien upon real or personal property; and (4) the attachment is not sought and the action is not prosecuted to hinder, delay, or defraud any creditor of the defendant. *See* Idaho Code 8-502(a).

After a plaintiff files an application of a writ of attachment, the court "shall, without delay, examine the complaint and affidavit, and if satisfied that they meet the requirements of subdivision (a), it shall issue an order directed to the defendant to show cause why a writ of attachment should not issue." Idaho Code § 8-502(b).

In addition, the Court may "prior to a hearing" issue a writ of attachment "if

probable cause appears…[b]y reason of specific facts shown, the property specifically sought to be attached is a bank account subject to the threat of imminent withdrawal…or [the property] is in immediate danger of concealment[] or removal from this state, or of sale to an innocent purchaser, and the holder of such property threatens to destroy, harm, conceal, remove it from the state, or sell to an innocent purchaser." Idaho Code § 8-502(c)(3).

Finally, "[u]pon the hearing on the order to show cause, the court shall consider the showing made by the parties appearing, and shall make a preliminary determination of whether there is a reasonable probability that the plaintiff will prevail in its claim." Idaho Code § 8-502(e).

### B. Idaho's fraudulent transfer statutes

Idaho Code § 55-913(1)(a) provides that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor . . . ." Subsection (2) sets forth several factors that are indicia of actual intent to hinder, delay or defraud, including whether the transfer was "disclosed or concealed" and "[b]efore the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit." In an action for relief against a transfer pursuant to Section 55-913, a creditor may obtain, among other things, "[a]n attachment or other provisional remedy against the asset transferred or other property of the transferee if available under

applicable law[.]" *See* Idaho Code § 55-916(1)(b). A creditor may also obtain "avoidance of the transfer," "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other party" and "any other relief the circumstances may require."

### C. The Show-Cause Hearing

Eta has met the standard set forth in Idaho Code section 8-502(b) for this Court to order a show-cause hearing related to defendants' transfer of $270,000 to AAP and then to Pitt. Based on the materials submitted with Eta's application, the Semones defendants are indebted to Eta through their knowing receipt and retention of $1.5 million in stolen funds; the debt may thus be viewed as being upon a contract, express or implied, for the direct payment of money;[3] and the debt is not secured by any mortgage, deed of trust, security interest, or lien. Further, there is no evidence that the attachment is sought, or that the action is prosecuted, to hinder, delay, or defraud any other of defendants' creditors.

Next, regarding the $270,000 transfer to AAP Holdings on the day of the show-cause hearing, the circumstances and timing of this transaction indicate an actual intent to hinder, delay, or defraud. *See* § 55-913(2). Among other things, within a few days after

---

[3] *Wallace v. Perry*, 257 P.2d 231, 233 (Idaho 1953); *see also, Smith v. Smith*, 511 P.2d 294 (Idaho 1973) ("The substance of an action for unjust enrichment lies in a promise, implied by law, that a party will render to the person entitled thereto that which in equity and good conscience belongs to the latter."); *Hixon v. Allphin*, 281 P.2d 1042, 1045 (Idaho 1955) ("The essence of a quasi contractual obligation lies in the fact that defendant has received a benefit which it would be inequitable for him to retain."); *Cont'l Forest Prods. v. Chandler Supply Co.*, 518 P.2d 1201, 1205-06 (Idaho 1974) (same).

Semones met with Eta representatives to discuss Semones' theft, Semones revealed the existence of a Wells Fargo brokerage account with a substantial sum of cash in it and promised to provide bank statements to plaintiff. But then just four days later, Semones withdrew $500,000 from that Wells Fargo brokerage account, placed it into a newly opened account and then – apparently just hours or moments before the show-cause hearing seeking to attach his bank accounts – Semones transferred a very significant sum of money ($270,000) to AAP. AAP then transferred the money to Pitt, who had previously been convicted of wire fraud. There may be an innocent explanation for all of this, but the evidence before the Court suggests an intent to defraud.

The Court will therefore schedule a for-cause hearing in compliance with the requirements of Idaho Code Section 8-502(b) (providing that the hearing "shall be no sooner than five (5) days from the issuance thereof, and shall direct the time within which service thereof shall be made upon the defendant[s].").

### D. The Writ of Attachment

The next question is whether the Court should issue the writ of attachment before the show-cause hearing.

A key question is whether plaintiff has shown that the bank account sought to be attached – *i.e.*, Pitt's account – is "subject to the threat of imminent withdrawal." Idaho Code § 8-502(c)(3). On this score, plaintiff argues that "Defendants were undeterred by the filing of this action, the Court's issuance of an ex parte writ of attachment, and the Court's Order at the Order to Show Cause hearing. They are so determined to conceal

assets from Plaintiff they executed a wire of $270,000 the day of the OSC and thereafter transferred the funds again days later with a Court ordered 'full accounting' looming. The fact remains, a thief cannot be trusted to hold stolen cash while the legal process plays out." *Mem. Supporting Ex Parte App.*, Dkt. 36-1, at 12-13 (footnote and paragraph division omitted).

The Court is not entirely persuaded. These arguments are mainly directed to conduct by the Semones – not conduct by AAP and Pitt. On the other hand, however, and as already pointed out above, the circumstances and timing under which AAP and then Pitt obtained the $270,000 is suspicious. At this time, the Court will decline to attach the bank account but will instead order Pitt and AAP not to transfer or otherwise spend the $270,000. *See* Idaho Code 8-502(d) (providing that in certain circumstances, the judge may, in addition to the issuance of an order to show cause, issue such temporary restraining orders to the defendant, prohibiting such acts with respect to the property, as may appear to be necessary for the preservation of rights of the parties and the status of the property.").

## ORDER

**IT IS ORDERED that:**

**(1)** The Court will **REFRAIN FROM RULING** on the Plaintiff's Ex Parte Application for Leave to File a Second Amended Complaint (Dkt. 35). Defendants shall file a response to this application by no later than Wednesday, **January 23, 2019**. The optional reply brief shall be due **January 25, 2019**.

(2) Plaintiff's Ex Parte Application for Writ of Attachment (Dkt. 36) is

**GRANTED in part** and **DENIED in part** as follows:

a. The request that a prejudgment writ of attachment be issued before the OSC hearing is denied.

b. Third parties AAP Holdings, Ltd. and Andrew Pitt are hereby RESTRAINED from transferring or otherwise spending the $270,000 shown in Andrew Pitt's Banner Bank Account ending in 5038 until the **January 30, 2019** OSC hearing.

c. AAP Holdings, Ltd. and Andrew Pitt are ordered to show cause why a writ of attachment should not issue. The hearing for the Order to Show Cause shall be on **January 30, 2019 at 2:00 p.m. in Courtroom 3 of the above-captioned Courthouse, located at 550 West Fort Street, Boise, Idaho.**

d. AAP Holdings, Ltd. and Andrew Pitt are informed, in accordance with Idaho Code § 8-502(b) that they may file affidavits on their behalf with the Court and they may appear and present testimony at the hearing or they may, prior to the hearing, file with the Court a written undertaking to stay the issuance of the writ of attachment, in accordance with the provisions of Idaho Code § 8-506C. If AAP and Pitt fail to appear, plaintiff will apply for a writ of attachment without further notice.

e. IT IS FURTHER ORDERED THAT, pursuant to Idaho Code § 8-

502(b), service of this Order, together with a copy of the operative complaint, both ex parte applications, and all supporting documents, shall be made upon AAP Holdings, Ltd. and Andrew Pitt through personal service within five (5) days of issuance of this Order. Plaintiff shall cause proof of service to be filed with the Court prior to the hearing.

DATED: January 18, 2019

_____
B. Lynn Winmill
U.S. District Court Judge